UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LE ANN CASTRO,

    *Plaintiff*,

*v*.                              CASE NO. 12-CV-12822

COMMISSIONER OF               DISTRICT JUDGE JULIAN ABELE COOK
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**, and that the case be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g).

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 19.)

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Plaintiff was 51 years of age at the time of the most recent administrative hearing. (Tr. at 41.) Plaintiff's employment history includes work as a clerk at a convenience store for one year, a laborer in a factory for four years, a medical office billing clerk for two months, and a secretary in a hospital for one month. (Tr. at 161.) Plaintiff filed the instant claims on October 12, 2007, alleging that she became unable to work on July 13, 2007. (Tr. at 114-17, 118-24.) The claims were denied at the initial administrative stage. (Tr. at 62, 63.) In denying Plaintiff's claims, the Commissioner considered carpal tunnel syndrome, osteoarthritis, and allied disorders as possible bases for disability. (*Id.*) On March 16, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") B. Lloyd Blair, who considered the application for benefits *de novo*. (Tr. at 22-35, 36-61.) In a decision dated April 8, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 31.) Plaintiff requested a review of this decision on April 23, 2010. (Tr. at 18.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on December 6, 2010, and June 6, 2012, when, the Appeals Council denied Plaintiff's request for review initially and after Plaintiff had submitted more evidence but the Appeals Council found no reason to reopen and change the decision based on the additional evidence.[2] (Tr. at 1-2, 13-17, 780-85.) On June 27, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the

---

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely

because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of

4

their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden

5

transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2010, and that Plaintiff had not engaged in substantial gainful activity since July 13, 2007, the alleged onset date. (Tr. at 24.) At step two, the ALJ found that Plaintiff's fibromyalgia (status post right shoulder surgery and neck surgery), bilateral carpal tunnel syndrome, shortness of breath, and depression were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 24-25.) At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (Tr. at 29.) The ALJ also found that Plaintiff was 49 years old on the alleged disability onset date and, thus, a younger individual (between the ages of 18 and 49). (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 25-29.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 31.)

### E. Administrative Record

The evidence of record reveals that Plaintiff was treated at Sparrow Hospital from June to July 2007 and December 2007 to May 2008 for shoulder, neck and back pain and carpal tunnel syndrome. (Tr. at 221-28, 369-445.) Plaintiff was treated by Edward Sladek, M.D., from June to September 2007 for a shoulder arthroscopy and carpal tunnel release. (Tr. at 229-32.) Plaintiff was treated at Memorial Healthcare Center from 2006 through 2009 for neck and back pain. (Tr. at 233-38, 459-505, 628-30, 668-92.)

Plaintiff was treated by John Behm, D.O., from 2006 to 2009 for shoulder pain, anxiety, depression, difficulty breathing, paresthesia, neck and back pain, GERD, mood swings,

6

hyperlipidemia, headaches, and carpal tunnel syndrome. (Tr. at 239-354, 540-602, 652-67.) Plaintiff was also treated by Justus Fiechtner, M.D., and Monika Mohan, M.D., from 2007 to 2010 for fibromyalgia and osteoarthritis. (Tr. at 513-39, 647-51, 729-30, 742-43.) Plaintiff was treated at Lansing Neurological Associates from 2007 to 2008 for neck pain. (Tr. at 355-57, 605-27.) Plaintiff was also treated by Angela Borders-Robinson, D.O., in 2007. (Tr. at 361-68.)

Plaintiff sought treatment for depression with Catholic Charities in 2008. (Tr. at 631-44.) Plaintiff was treated by John K. Throckmorton, D.P.M., in 2008. (Tr. at 645.) Plaintiff was treated at the Women's Personal Growth and Therapy Center in 2008. (Tr. at 646.) Plaintiff was also treated at the Shiawassee Community Health Center in 2009. (Tr. at 693-728.)

In 2009 and 2010, Plaintiff was treated at Health Delivery, Inc., specifically by Dr. Renae Carter. (Tr. at 731-34, 735-38, 739-41.) Plaintiff was also treated at Michigan Rehabilitation Services in 2008. (Tr. at 744-79, 780-85.) A Physical Residual Functional Capacity ("RFC") Assessment was completed on January 16, 2008. (Tr. at 361-68.)

Plaintiff testified at the administrative hearing that she was diagnosed with fibromyalgia in January 2009. (Tr. at 45.) Plaintiff also indicated that she underwent C6-C7 fusion surgery in December 2007. (Tr. at 48.) In addition, Plaintiff underwent carpal tunnel surgery on her right hand in 2007. (Tr. at 46.) Plaintiff stated that she can tie shoelaces and sometimes button her clothes, but that she can't use zippers or pick up coins from a table. (*Id.*) Plaintiff stated that she cannot bend over to pick up a dollar bill off the floor, she cannot climb more than five or six steps, and that the most she could lift is 10 pounds. (Tr. at 51.) Plaintiff testified that she can stand for an hour or two out of a 24-hour period, can sit for 30 or 40 minutes before needing to get up, and can walk a block or a block and one-half. (Tr. at 51.) She clarified that she can stand somewhere between 20 and 40 minutes at a time, such as in line at a store, but if she does so her "knees start to hurt and back starts to burn and my hips hurt and I want to shift and I want to just go home. I'm sorry. My brain is - - I'm sorry." (Tr. at 52.) Plaintiff cannot turn her head to the left and she experiences pain if she looks down for prolonged periods of time. (*Id.*) Plaintiff also has numbness and tingling in her hands and she wears a brace at times to help with the pain. (Tr. at 53.) Plaintiff

7

also stated that she gets short of breath if she walks or carries something, has difficulty with overhead reaching, pushing and pulling, and has gained weight from being less active. (Tr. at 53-54.) Plaintiff also stated that the arthritis in her ankles would make using any foot pedals very difficult. (Tr. at 54.)

The ALJ asked the Vocational Expert ("VE") to assume a person with Plaintiff's background who could

> meet the demands of light work, should not use ladders, scaffolds or rope. Should only occasionally use ramps, stairs, stoop, kneel, crouch or crawl. Should never use pneumatic torque or power tools. May frequently but not constantly reach and finger with the right extremity, with both upper extremities. Should only occasionally bend, twist or turn at the neck. Should do no jobs requiring foot pedal use. Should have [INAUDIBLE] work with an SVP: 1 or 2, work involving just one, two or three-step instructions. No work requiring concentration and detail or precision tasks or multi-tasking, computing or problem solving.

(Tr. at 59.) The VE responded that such a person could not perform any of Plaintiff's past relevant work but could perform the 4,100 counter attendant, 1,000 counter clerk, and 2,400 information clerk unskilled, light jobs available in the lower peninsula of Michigan. When asked by the ALJ, the VE testified that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 60.) When the ALJ asked the VE if Plaintiff could perform any jobs if the ALJ found Plaintiff's testimony to be truthful in all aspects, the VE indicated that the only jobs Plaintiff could perform would be "a restricted range of unskilled, sedentary work[.]" (*Id.*)

**F.   Analysis and Conclusions**

**1.   Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 25-29.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

8

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 13.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "committed reversible error by failing to give controlling weight to the Plaintiff's treating physicians, and then by failing to give 'good reasons' for his failure to do so." (Doc. 13 at 6-10.) Plaintiff also contends that the ALJ "commits further error when he discounts the Plaintiff's credibility because her daily activities 'were not the activities and abilities of an individual who was completely unable to engage in any substantial gainful activity.'" (*Id*. at 10.) Plaintiff further argues that the ALJ "erred in failing to find Plaintiff's low back, leg and foot pain were serious impairments." (*Id*. at 10-11.) "Finally, the Plaintiff submits that it was reversible error for the Administrative Law Judge to continue to evaluate her as a younger individual, when she was already 49 years, three months old on the alleged onset date, and was nearly 52 years old at the time of the hearing." (*Id*. at 11.)

As noted earlier in this Report, pages 780 through 785 of the administrative record were admitted into evidence at the Appeals Council stage and are not a part of the record subject to judicial review for substantial evidence. *See Cline,* 96 F.3d at 148; *Cotton,* 2 F.3d at 696.

### a. Treating Source Opinions
### i. Standards

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

In addition, "a treating physician's assessment may be unreliable because of the bias he or she may bring to the disability evaluation," i.e., he or she "'may want to do a favor for a friend and

client, and so the treating physician may too quickly find disability.'" *Id.* at 1073 (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)). "Additionally, we have noted that the claimant's regular physician may not appreciate how her patient's case compares to other similar cases, and therefore that a consulting physician's opinion might have the advantages of both impartiality and expertise." *Dixon*, 270 F.3d at 1177. "[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Once the treating source is placed on the same level as other medical opinions, the treating source opinion should not be subjected to "greater scrutiny" than the non-treating sources, especially when there are more flagrant inconsistencies in the opinions of the non-treating sources. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013).

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors may be applied to all medical opinions, not just treating sources. SSR 06-3p, 2006 WL 2329939, at *3 (2006). However, because of the special status of treating source opinions, where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p, 2006

11

WL 2329939, at *1-2 (2006). After treating sources, a "nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

### ii. Analysis

The ALJ in the instant case gave "some weight" to Dr. Behm's assessment to the extent it was consistent with the ALJ's RFC analysis (Tr. at 28) and gave "little weight" to Dr. Carter's assessment. (Tr. at 29.) The ALJ's reason for discounting Dr. Behm's assessment was that the ALJ found the assessment to be "somewhat overstated when considered in light of the evidence of record as a whole." (Tr. at 28.) The ALJ indicated he discounted Dr. Carter's assessment "as it is not consistent with the treatment records or the record as a whole." (Tr. at 29.)

Dr. Behm's "Attending Physician's Statement" indicated "moderate limitation of functional capacity; capable of clerical/administrative (sedentary) activity" and that total disability from any occupation began in July 2007 and ended July 2008. (Tr. at 600.) The statement also provided that a fundamental or marked change was expected in the future. (*Id.*) I note that the ALJ inaccurately reported that Dr. Behm "did not expect a fundamental or marked change in the future." (Tr. at 28.) Since the statement provided that sedentary work could be performed at that time, that the doctor expected the total disability to end in July 2008, and anticipated a fundamental change in the future, I suggest that Dr. Behm's statement does not support Plaintiff's claim of total disability as defined by the social security regulations. Therefore, even if it were afforded controlling weight, it would not be of significant help to Plaintiff. I accordingly suggest that any error in discounting the opinion of Dr. Behm would be harmless. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

Dr. Carter opined that Plaintiff could lift ten pounds occasionally, ten pounds frequently, could stand or walk less than two hours in an eight-hour workday, sit less than six hours in an eight-hour workday, and was limited in upper and lower extremities. (Tr. at 735-36.) Dr. Carter also found that Plaintiff should only occasionally perform some postural activities and should never kneel, crouch, or crawl. (Tr. at 736.) Dr. Carter found Plaintiff to be limited in all manipulative areas except handling, and stated that she should avoid temperature extremes, humidity, and hazards. (Tr. at 737-38.) Dr. Carter's explanations for the limitations centered on fibromyalgia.

As to Dr. Carter's assessment, I first suggest that ALJ's stated one-sentence reason for rejecting the assessment, i.e., that "it is not consistent with the treatment records or the record as a whole," is insufficient. (Tr. at 29.) *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (rejection of treating physician's opinion on the ground that it was contrary to findings in the record did not satisfy ALJ's burden because it was too broad and vague).

Defendant argues that Dr. Carter was not a treating physician since "notes from Health Delivery, Inc., are signed by someone with the initials D.S. who may have been a physician's

13

assistant" and that "it appears that Dr. Carter merely signed" the paperwork that someone else filled out. (Doc. 19 at 9-10.) However, district courts in our circuit have rejected such arguments. *See Puckett v. Comm'r of Soc. Sec.*, No. 1:10-cv-528, 2011 WL 436665, at *3 (S.D. Ohio Sept. 19, 2011) (even though record showed only one treatment note between doctor and the plaintiff, since doctor had access to the progress notes taken by his nurse, he would have insight into the plaintiff's condition and thus should be considered a treating source); *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2010 WL 5795503, at *5 (S.D. Ohio Aug. 31, 2010) (remanding and citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998), because to the extent that treatment notes are unclear regarding the number of visits attributable to the treating physician versus others at a clinic, it is the Commissioner's responsibility to clarify the record).[3]

Consequently, I suggest that Dr. Carter was a treating physician whose opinion was entitled to controlling weight and, since the ALJ failed to adequately explain why he discounted Dr. Carter's opinion, the case should be remanded.

    **b.**    **Credibility Analysis**

In addition, I suggest that the ALJ's credibility analysis is lacking. "Given that it is simply impossible for the ALJ to re-evaluate the treating physician evidence without evaluating plaintiff's pain and other credibility issues, the undersigned concludes that plaintiff's credibility must be reassessed as well." *Wladysiak v. Comm'r of Soc. Sec.*, No. 11-14494, 2013 WL 1480665 (E.D. Mich. June 10, 2013).

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y*

---

[3]*Cf. Wilke v. Astrue*, No. 8:11CV435, 2012 WL 5464183, at *7 (D. Neb. Nov. 8, 2012) (collecting several district court cases holding that an ALJ does not err in failing to give a physician's opinion more weight where the physician merely supervised and conferred with others such that his relationship was similar to that of a non-examining source).

*of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely*

15

because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i) [D]aily activities;

(ii) The location, duration, frequency, and intensity of . . . pain;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v) Treatment, other than medication, . . . received for relief of . . . pain;

(vi) Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered each of the above factors. (Tr. at 16-21.) Plaintiff argues that the "ALJ erred in his assessment of Plaintiff's credibility and non-compliance with treatment" as it "relates to her hypertension and that the claimant did not seek more than conservative treatment." (Doc. 11 at 8-9.) I first suggest that the ALJ's discussion of Plaintiff's non-compliance as to blood pressure is not significant to the ALJ's findings. As noted by the ALJ, evidence of non-compliance can only undermine a finding of disability with respect to the impairment the claimant could have better controlled with compliance and, in this case, hypertension was not considered a severe impairment. (Tr. at 20.) In addition, I suggest that the ALJ's reference to conservative treatment was not related to anything that Plaintiff failed to "seek" but instead was mentioned to support his findings that Plaintiff's impairments were not disabling. (Tr. at 21.) In other words, the ALJ was merely paraphrasing precedent holding that modest or conservative treatment is inconsistent with a finding of disabling symptoms. *See Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

In the instant case, the ALJ discounted Plaintiff's credibility because she "had described daily activities which were not limited to the extent he would expect, given her complaints of

16

disabling symptoms and limitations." (Tr. at 28.) Plaintiff reported that she handles financial matters, reads, uses a computer, watches television, socializes, and is able to follow directions. The ALJ stated that Plaintiff "would do light things around the house, but not much because of her pain" and that "[c]learly, these were not the activities and abilities of an individual who was completely unable to engage in any substantial gainful activity." (*Id.*)

Given the nature of fibromyalgia, where objective evidence is elusive and subjective complaints are central to diagnosis and treatment, providing justification for discounting a plaintiff's credibility is particularly important. *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863-64 (6th Cir. 2011); *Minor v. Comm'r of Soc. Sec.*, No. 12-1268, 2013 WL 264348, at *16-17 (6th Cir. Jan. 24, 2013) (also noting that fibromyalgia symptoms are entirely subjective); *Wladysiak, supra.*

Accordingly, I suggest that the ALJ's credibility findings are insufficient, that the decision is not supported by substantial evidence, and that the case should be remanded.

### c. Remand

Once it has been determined that the Commissioner's administrative decisions are not supported by substantial evidence, a district court faces a choice. It may either remand the case to the Commissioner for further proceedings or direct the Commissioner to award benefits. The court may reverse and direct an award of benefits if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits . . . where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Felisky,* 35 F.3d at 1041; *accord, Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). This comports with the principle that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F3d 541, 547 (6th Cir. 2004) (citations omitted).

In this case, for the reasons set forth above, I conclude that there are unresolved legal and factual issues. I therefore suggest that the ALJ's decision should be reversed and the case remanded under sentence four of § 405(g).

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
|  | s/ Charles E Binder |
|  | CHARLES E. BINDER |
| Dated: July 2, 2013 | United States Magistrate Judge |

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

| Date:  July 2, 2013 | By     s/Patricia T. Morris |
|---|---|
|  | Law Clerk to Magistrate Judge Binder |

18